O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JS - 6

| | |
|---|---|
| BRIAN RUBIN, an individual; HYDRO THERM TECHNOLOGIES GROUP, LLC, a Tennessee limited liability company, | Case No. CV 12-10140 DDP (Ex) **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| Plaintiffs, | [Dkt. No. 9] |
| v. | |
| MICHAEL BRISCOE, an individual; WESTBRIDGE MUTUAL, LLC, a California Limited Liability Company; DAYO BEVERLY, an individual; DANNY GOTVALD, an individual; JESSE HATHORN, an individual; JON DIVENS, an individual; CHIP CANTRELL, an individual; LAW OFFICE OF JOHN DIVENS, LLC, a busines entity of unknown form; et al. | |
| Defendants. | |

On November 28, 2012, Plaintiffs Brian Rubin and Hydro Therm Technologies Group, LLC, filed this action against numerous defendants alleging ten causes of action for civil RICO violations, fraud, breach of contract, and negligence. On December 18, 2012, the Court issued an Order to Show Cause requiring Plaintiffs to

file a Federal Claims Case Statement with respect to the RICO claim, to which Plaintiffs responded on January 4, 2013. On March 21, 2013, the Court dismissed Hydro Therm from the case as an improperly joined plaintiff, leaving Rubin as the sole Plaintiff.

Presently before the Court is the Motion to Dismiss Plaintiff's Complaint as to Defendants Jon Divens and Law Offices of Jon Divens & Associates, LLC (collectively "Divens Defendants"). (Dkt. No. 9.) Having considered the parties' pleadings and the arguments therein, the Court GRANTS Defendants' Motion to Dismiss.

**I.   BACKGROUND**

Plaintiff's Complaint alleges a host of facts against eighteen defendants (plus twenty Doe Defendants), many of which are entirely unrelated to the Divens Defendants. Only the facts relevant to Plaintiff Rubin's claims against the Divens Defendants are recited here.

In September 2010, Plaintiff sought to obtain a Standby Letter of Credit ("SBLC"), a financial instrument used in business transactions as proof of a buyer's credit quality and repayment abilities. (Compl. ¶¶ 33, 60.) At that time, to assist him with obtaining the SBLC, Plaintiff was referred to Defendant Linda Jamison, who in turn referred Plaintiff to Defendant Michael Briscoe, a member of Defendant Unity Bankcard Services, LLC ("UBS"), and Defendants Hilary Whitfield and Tom Okeyo, controlling members of Defendant BDP Worldwide, LLC ("BDP"). (*Id.* ¶¶ 13, 20, 61.) On September 23, 2010, Plaintiff entered into a Funding Agreement with BDP whereby BDP would procure the SBLC and Plaintiff would contribute $200,000 toward the $500,000 fee to participate in an SBLC funding program. (*Id.* ¶ 62 & Ex. C.) Plaintiff and

2

Whitfield, on behalf of BDP, signed the agreement. (*Id.* Ex. C.) Divens, an attorney, drafted the BDP Funding Agreement. (*Id.* ¶ 62.) Plaintiff wired the $200,000 directly into Divens's escrow account. (*Id.*)

On October 1, 2010, BDP, represented by Whitfield, and UBS, represented by Briscoe, entered into a second Funding Agreement whereby UBS would assist BDP in obtaining the SBLC. (*Id.* ¶ 63 & Ex. D.) The agreement provided that BDP and UBS would each advance $500,000 toward the cost of the SBLC, to be deposited into a designated escrow account. (*Id.*) Plaintiff alleges that his $200,000 was included in the $500,000 that BDP was to contribute pursuant to this agreement, but he was not expressly a party to the agreement or named in its provisions. (*Id.* ¶ 63.) Also on October 1, 2010, Briscoe (in his own name, and not as a representative of UBS), BDP (represented by Whitfield), and Divens entered into an Escrow Agreement whereby Divens would serve as the escrow agent for the funds contributed by the other two parties, which would be maintained in Divens's escrow account. (*Id.* ¶¶ 64-65 & Ex. E.) Again, Plaintiff was not a party to or mentioned in the Escrow Agreement. (*Id.* Ex. E.)

Plaintiff alleges that the SBLC was not obtained and that at some point Divens released the subject funds to an unknown third party without Plaintiff's knowledge or consent. (*Id.* ¶ 66.) When Plaintiff learned this information, he contacted Divens, Briscoe, Whitfield, Okeyo, and Jamison. (*Id.* ¶ 67.) In each of these conversations, Plaintiff was given an excuse for why the SBLC had not been obtained. (*Id.*) On one occasion, Divens allegedly told Plaintiff that the transaction was delayed because bank personnel

3

were on vacation, and on another occasion, Whitfield told Plaintiff not to worry because "Briscoe always closed the deal with the banks." (*Id.*) Eventually, only Divens continued to communicate with Plaintiff, reassuring him in frequent conversations that Plaintiff would obtain the SBLC. (*Id.* ¶ 68.) By May 2011, Plaintiff's funds had still not been returned. (*Id.*)

At this time, Divens offered to provide his services to Plaintiff, representing that he would help Plaintiff obtain the SBLC and recoup Plaintiff's $200,000. (*Id.* ¶ 69.) Divens also allegedly told Plaintiff that Plaintiff's money was being held by Defendant Pelico International Funding and Development. (*Id.* ¶ 70.) On May 26, 2011, Plaintiff and Divens entered into a Contract Agreement whereby Divens would procure and share in the funds from the SBLC. (*Id.* ¶ 71 & Ex. F.) According to the contract, Plaintiff would contribute $210,000 toward the cost of the SBLC. (*Id.* Ex. F.) Divens allegedly told Plaintiff that he was in possession of Plaintiff's $200,000, which had been returned from Pelico, and therefore that this amount would be credited toward Plaintiff's contribution under the Contract Agreement. (*Id.* ¶ 72.) Plaintiff then paid Divens the $10,000 balance. (*Id.*)

In May 2012, Plaintiff demanded from Divens the return of the $210,000. (*Id.* ¶ 73.) Divens told Plaintiff that the money was being held in the client trust account of a "major, reputable law firm," but that he could not disclose the identify of the firm. (*Id.*) Divens told Plaintiff that he was therefore unable to return Plaintiff's money. (*Id.*) As of November 2012, the SBLC had not been funded and Plaintiff's money had not been returned. (*Id.* ¶ 75.)

4

**II.  LEGAL STANDARD**

    **A.  Rule 12(b)(6)**

Rule 8 of the Federal Rules of Civil Procedure "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When considering a 12(b)(6) motion to dismiss for failure to state a claim, "all allegations of material fact are accepted as true and should be construed in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).

A court need not accept as true conclusory allegations or allegations stating a legal conclusion. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996); *Iqbal v. Ashcroft*, 129 S.Ct. 1937, 1940-41 (2009) ("mere conclusions[] are not entitled to the assumption of truth."). A court properly dismisses a complaint on a Rule 12(b)(6) motion based upon the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under the cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). The plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." *Twombly*, 127 S. Ct. at 1965. That is, the plaintiffs' obligation requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 1964-65.

///

///

**III. DISCUSSION**

Plaintiff's claims against the Divens Defendants include civil RICO violations pursuant to 18 U.S.C. § 1962(c) and (d), fraud, and breach of contract.

    **A.   RICO**

Plaintiff's RICO claim is pled against all Defendants. The claim therefore includes, but is not limited to, the Divens Defendants, although only those Defendants' motion is presently before the Court.

"The Racketeer Influenced and Corrupt Organizations ("RICO") Act, passed in 1970 as Title IX of the Organized Crime Control Act, provides for both criminal and civil liability." *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007). To state a claim under § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

Here, Plaintiff alleges that "[a]ll defendants collectively constitute [an] enterprise" engaged in a racketeering scheme. (Federal Claims Case Statement at 17.) Plaintiff claims that the purpose of the enterprise was to defraud Plaintiff of his funds. Specifically, he claims that all of the defendants engaged in wire fraud, 18 U.S.C. § 1343, and money laundering, 18 U.S.C. § 1956 "by accepting the victim's wire transfers with the intent to defraud the victims out of the money without providing the loan the parties contracted for." (*Id.* at 15.) Plaintiff also claims that "Defendants attempted to conceal their fraud by shuffling the victims' funds from various bank accounts; for instance, Defendant Briscoe allegedly transferred HydroTherm's funds to an unknown law

firm and it is believed that Defendants Morelli and Divens each transferred Plaintiff Rubin's funds in a similar fashion." (*Id.* at 15-16.)

The first flaw in Plaintiff's pleadings is that he fails to allege how all of the various defendants—some of whom only transacted with the dismissed plaintiff Hydro Therm—together constitute a single enterprise. Plaintiff's complaint contains a section titled "General Allegations Regarding the Criminal Enterprise," which is broken down into additional sections, including a "General Overview of the Scheme," "Allegations Related to Hydro," and "Allegations Related to Rubin." The latter section is further divided into two sections: "Allegations Related to the Briscoe/Divens Scheme" and "Allegations Common to the Darkshore/Morelli Scheme." (Compl. ¶¶ 32-85.) All of the transactions alleged in these various schemes are distinct from one another and contain no specific allegations of interrelated conduct. Further, the "General Allegations" section precedes the RICO cause of action, which incorporates by reference the general allegations and adds conclusory allegations that "the Defendants within the enterprise maintained a relationship with each and every other Defendant for the common purpose of carrying out racketeering activity." (*Id.* ¶ 90.)

With respect to an association-in-fact enterprise, the type of enterprise Plaintiff alleges here, the Supreme Court has stated:

> [A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. As we succinctly put it in *Turkette*, an association-in-fact enterprise is 'a

7

    group of persons associated together for a common
    purpose of engaging in a course of conduct.'

*Boyle v. United States*, 556 U.S. 938, 946 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Although the complaint alleges that all of the defendants had the common purpose of defrauding the plaintiffs, it fails to allege any relationship among the various defendants. Only two of the eighteen named defendants were allegedly involved in more than one of the three distinct schemes alleged in the Complaint. Defendant Briscoe was allegedly involved in the BDP/UBS scheme that also allegedly involved the Divens Defendants, and Briscoe was allegedly involved in the Hydro Therm scheme, which is no longer at issue in this case. Defendant Jamison was allegedly involved in both schemes related to Rubin—the scheme involving the Divens Defendants and a separate scheme that is not at issue in the motion before the Court. However, Plaintiff alleges no facts to show any relationship between schemes other than that they share a few common participants and the same victim (Plaintiff Rubin). There are no allegations that any of the defendants involved in each of the schemes were even aware of the defendants involved in other schemes. This is insufficient to support the existence of an associated-in-fact RICO enterprise comprised of all of the named defendants, and for similar reasons, the allegations are insufficient to establish a "pattern" of racketeering activity across all of the defendants. *See Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000) ("[M]erely having the same participants is insufficient to establish relatedness. . . . To hold that Plaintiffs have established relatedness solely because

8

they implicate the same participants makes that requirement virtually meaningless.").

Even if the Court were to read the Complaint as alleging multiple separate enterprises—which it need not do, and which both the Complaint and Plaintiff's Federal Claims Case Statement make clear is not Plaintiff's intention—Plaintiff fails to plead the predicate acts engaged in by the Divens Defendants with sufficient particularity to sustain his RICO claim. The two predicate acts alleged by Plaintiff are wire fraud and money laundering. Both are predicate acts defined by Section 1961 of RICO. *See* 18 U.S.C. § 1961(1).

Federal Rule of Civil Procedure 9(b) requires that fraud be pled with particularity. It provides: "In all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." "Rule 9(b) 'requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *Odom*, 486 F.3d at 553 (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986)). "[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id.* (internal quotation marks omitted). In short, the factual circumstances of the fraud itself must be alleged with particularity. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994). This heightened pleading requirement

applies to fraud-based predicate acts in RICO causes of action. *See Odom*, 486 F.3d at 553-54.

"[A] wire fraud violation consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Id.* at 554. Although Plaintiff alleges that he wired $200,000 to Divens's escrow account, and although the exhibit attached to the Complaint lists a Bank of America account number for Divens, Plaintiff never specifically alleges when he wired the money, from what institution he wired it, or to which institution it was delivered. (*See* Compl. ¶ 62 & Ex. C.) Neither does Plaintiff allege the dates of his conversations with Divens about the money once he discovered it had been released to "an unknown third party." (*See Id.* ¶¶ 66-70.) He does not allege when or how he paid Divens the additional $10,000 required by the parties' Contract Agreement. (*See Id.* ¶ 72.) As these were conversations in which Plaintiff participated and wire transfers that he initiated, he should be able "to plead the factual circumstances of the alleged fraud with the requisite level of particularity." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558-59 (9th Cir. 2010).

With respect to the predicate act of money laundering, 18 U.S.C. § 1957 "makes it unlawful to 'knowingly engage[ ] or attempt[ ] to engage in a monetary transaction in criminally derived property of a value greater than $10,000,' if that property 'is derived from specified unlawful activity.'" *United States v. Phillips*, 704 F.3d 754, 763 (9th Cir. 2012). The Divens

10

Defendants' alleged wire fraud could constitute the "specified unlawful activity" in this case, *see* 18 U.S.C. § 1957(f)(3); 18 U.S.C. §§ 1956(c)(7)(A), 1961(1)(B), however, Plaintiff does not even attempt to connect any particular monetary transactions or unlawful activity to the money laundering predicate, nor does he allege whether the Divens Defendants "had the requisite intent to launder funds in furtherance of a RICO scheme." *Desoto v. Condon*, 371 Fed. App'x. 822, 824 (9th Cir. 2010).

Indeed, Plaintiff's RICO allegations state:

> Defendants engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by engaging in the acts set forth above. The acts set forth above constitute a violation of one or more of the following statutes: 18 U.S.C. § 1343 and 18 U.S.C. § 1957. The Conspiring Defendants and the other conspirators each committed and/or aided and abetted the commission of two or more of these acts of racketeering activity.

(Compl. ¶ 92.)

To the extent that the particular relevant facts are buried in the "General Allegations" section—the only possible "acts set forth above"—which comprises 54 paragraphs over 11 pages, the Court is not required to sift through the allegations to find the facts that relate to each cause of action. *See Izenberg v. ETS Services, LLC*, 589 F. Supp. 2d 1193, 1203-04 (C.D. Cal. 2008) ("[T]he court need not guess which activities allegedly constitute predicate acts."); *Graf v. Peoples*, 2008 WL 4189657 (C.D. Cal. Sept. 4, 2008) ("Plaintiff's RICO claims incorporate the Complaint's initial lengthy description of many different asserted acts of wrongdoing by various Defendants. Plaintiff does not expressly identify any RICO predicate acts, but simply incorporates his previous allegations. Such 'shotgun' pleading is

11

insufficient to plead a RICO claim.").

The Court previously required that the Plaintiff specify precisely the facts that supported his RICO claim in a Federal Claims Case Statement. However, Plaintiff's statement does little to clarify the Complaint and fails to expressly answer each of the required categories of information. The statement repeats almost verbatim different sections of the Complaint, and in certain places, instead of providing the requested information, it refers the Court to a previous section where that information is purportedly, but not always, provided (for example, the dates of the predicate acts requested in Section 5(b)).

Because Plaintiff has insufficiently plead a plausible claim for damages under RICO, the Court grants Defendants' motion to dismiss this claim with prejudice.

**B. Remaining State Law Claims**

Plaintiff's RICO claim provides the sole basis for federal question jurisdiction. While federal courts may exercise supplemental jurisdiction over state-law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction," *id*. § 1367(c)(3). Indeed, unless "considerations of judicial economy, convenience[,] and fairness to litigants" weigh in favor of the exercise of supplemental jurisdiction, "a federal court should hesitate to exercise jurisdiction over state claims." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966);

12

*see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.").

Accordingly, the court declines to exercise its supplemental jurisdiction here.

**IV. CONCLUSION**

Plaintiff has had two opportunities to adequately plead his claims—once in his Complaint, and once in his Federal Claims Case Statement in response to the Court's Order to Show Cause. In that Order, the Court warned Plaintiff that "[f]ailure to adequately respond to this Order may result in the dismissal with prejudice of all federal claims for relief." For the foregoing reasons, the Court GRANTS the Divens Defendants' motion to dismiss Plaintiff's RICO claim with prejudice.

The Court also GRANTS the Divens Defendants' motion to dismiss Plaintiff's fraud and breach of contract claims as to the Divens Defendants. The Court recognizes, however, that if true, Plaintiff's allegations are serious, and the Court therefore dismisses Plaintiff's state law claims without prejudice as to his re-filing in state court with appropriate allegations of fraud.[1]

Finally, because Plaintiff's RICO claim is pled against all Defendants and Plaintiff has insufficiently alleged an association-in-fact enterprise consisting of all Defendants, the RICO claim is dismissed with prejudice as to all remaining Defendants. *See Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638

---

[1] The Court notes that any relevant statues of limitations are likely subject to equitable tolling.

13

(9th Cir. 1988) ("A trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim . . . . The court must give notice of its intention to dismiss and give the plaintiff some opportunity to respond unless the plaintiffs cannot possibly win relief." (internal quotation marks omitted)).  Plaintiff cannot possibly win RICO damages against the remaining Defendants as he has failed to allege the existence of an enterprise.  For the same reasons as with the state law claims against the Divens Defendants, the Court also dismisses the fraud, breach of contract, and negligence claims as to all remaining Defendants, without prejudice as to their re-filing in state court.

IT IS SO ORDERED.


Dated: April 18, 2013

DEAN D. PREGERSON
United States District Judge