O

1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                   CENTRAL DISTRICT OF CALIFORNIA

7

8                                                   JS - 6

9

10

| | |
|---|---|
| 11  BRIAN RUBIN, an individual;   ) | Case No. CV 12-10140 DDP (Ex) |
| HYDRO THERM TECHNOLOGIES       ) | |
| 12  GROUP, LLC, a Tennessee        ) | **ORDER GRANTING DEFENDANTS' MOTION** |
| limited liability company,     ) | **TO DISMISS** |
| 13                                 ) | |
|                 Plaintiffs,    ) | [Dkt. No. 9] |
| 14       v.                        ) | |
|                                    ) | |
| 15  MICHAEL BRISCOE, an            ) | |
| individual; WESTBRIDGE         ) | |
| 16  MUTUAL, LLC, a California      ) | |
| Limited Liability Company;     ) | |
| 17  DAYO BEVERLY, an individual;   ) | |
| DANNY GOTVALD, an              ) | |
| 18  individual; JESSE HATHORN,     ) | |
| an individual; JON DIVENS,     ) | |
| 19  an individual; CHIP           ) | |
| CANTRELL, an individual; LAW   ) | |
| 20  OFFICE OF JOHN DIVENS, LLC,    ) | |
| a busines entity of unknown    ) | |
| 21  form; et al.                   ) | |
|                                    ) | |
| 22               Defendants.       ) | |
|                                    ) | |
| 23  _____   ) | |

24      On November 28, 2012, Plaintiffs Brian Rubin and Hydro Therm

25  Technologies Group, LLC, filed this action against numerous

26  defendants alleging ten causes of action for civil RICO violations,

27  fraud, breach of contract, and negligence.  On December 18, 2012,

28  the Court issued an Order to Show Cause requiring Plaintiffs to

1 file a Federal Claims Case Statement with respect to the RICO

2 claim, to which Plaintiffs responded on January 4, 2013.  On March

3 21, 2013, the Court dismissed Hydro Therm from the case as an

4 improperly joined plaintiff, leaving Rubin as the sole Plaintiff.

5       Presently before the Court is the Motion to Dismiss

6 Plaintiff's Complaint as to Defendants Jon Divens and Law Offices

7 of Jon Divens & Associates, LLC (collectively "Divens Defendants").

8 (Dkt. No. 9.)  Having considered the parties' pleadings and the

9 arguments therein, the Court GRANTS Defendants' Motion to Dismiss.

10 **I.    BACKGROUND**

11      Plaintiff's Complaint alleges a host of facts against eighteen

12 defendants (plus twenty Doe Defendants), many of which are entirely

13 unrelated to the Divens Defendants.  Only the facts relevant to

14 Plaintiff Rubin's claims against the Divens Defendants are recited

15 here.

16      In September 2010, Plaintiff sought to obtain a Standby Letter

17 of Credit ("SBLC"), a financial instrument used in business

18 transactions as proof of a buyer's credit quality and repayment

19 abilities.  (Compl. ¶¶ 33, 60.)  At that time, to assist him with

20 obtaining the SBLC, Plaintiff was referred to Defendant Linda

21 Jamison, who in turn referred Plaintiff to Defendant Michael

22 Briscoe, a member of Defendant Unity Bankcard Services, LLC

23 ("UBS"), and Defendants Hilary Whitfield and Tom Okeyo, controlling

24 members of Defendant BDP Worldwide, LLC ("BDP").  (*Id.* ¶¶ 13, 20,

25 61.)  On September 23, 2010, Plaintiff entered into a Funding

26 Agreement with BDP whereby BDP would procure the SBLC and Plaintiff

27 would contribute $200,000 toward the $500,000 fee to participate in

28 an SBLC funding program.  (*Id.* ¶ 62 & Ex. C.)  Plaintiff and

1   Whitfield, on behalf of BDP, signed the agreement.  (*Id.* Ex. C.)

2   Divens, an attorney, drafted the BDP Funding Agreement.  (*Id.* ¶

3   62.)  Plaintiff wired the $200,000 directly into Divens's escrow

4   account.  (*Id.*)

5       On October 1, 2010, BDP, represented by Whitfield, and UBS,

6   represented by Briscoe, entered into a second Funding Agreement

7   whereby UBS would assist BDP in obtaining the SBLC.  (*Id.* ¶ 63 &

8   Ex. D.)  The agreement provided that BDP and UBS would each advance

9   $500,000 toward the cost of the SBLC, to be deposited into a

10  designated escrow account.  (*Id.*)  Plaintiff alleges that his

11  $200,000 was included in the $500,000 that BDP was to contribute

12  pursuant to this agreement, but he was not expressly a party to the

13  agreement or named in its provisions.  (*Id.* ¶ 63.)  Also on October

14  1, 2010, Briscoe (in his own name, and not as a representative of

15  UBS), BDP (represented by Whitfield), and Divens entered into an

16  Escrow Agreement whereby Divens would serve as the escrow agent for

17  the funds contributed by the other two parties, which would be

18  maintained in Divens's escrow account.  (*Id.* ¶¶ 64-65 & Ex. E.)

19  Again, Plaintiff was not a party to or mentioned in the Escrow

20  Agreement.  (*Id.* Ex. E.)

21      Plaintiff alleges that the SBLC was not obtained and that at

22  some point Divens released the subject funds to an unknown third

23  party without Plaintiff's knowledge or consent.  (*Id.* ¶ 66.)  When

24  Plaintiff learned this information, he contacted Divens, Briscoe,

25  Whitfield, Okeyo, and Jamison.  (*Id.* ¶ 67.)  In each of these

26  conversations, Plaintiff was given an excuse for why the SBLC had

27  not been obtained.  (*Id.*)  On one occasion, Divens allegedly told

28  Plaintiff that the transaction was delayed because bank personnel

3

1  were on vacation, and on another occasion, Whitfield told Plaintiff

2  not to worry because "Briscoe always closed the deal with the

3  banks." (*Id.*)  Eventually, only Divens continued to communicate

4  with Plaintiff, reassuring him in frequent conversations that

5  Plaintiff would obtain the SBLC. (*Id.* ¶ 68.)  By May 2011,

6  Plaintiff's funds had still not been returned. (*Id.*)

7       At this time, Divens offered to provide his services to

8  Plaintiff, representing that he would help Plaintiff obtain the

9  SBLC and recoup Plaintiff's $200,000. (*Id.* ¶ 69.)  Divens also

10 allegedly told Plaintiff that Plaintiff's money was being held by

11 Defendant Pelico International Funding and Development. (*Id.* ¶

12 70.)  On May 26, 2011, Plaintiff and Divens entered into a Contract

13 Agreement whereby Divens would procure and share in the funds from

14 the SBLC. (*Id.* ¶ 71 & Ex. F.)  According to the contract,

15 Plaintiff would contribute $210,000 toward the cost of the SBLC.

16 (*Id.* Ex. F.)  Divens allegedly told Plaintiff that he was in

17 possession of Plaintiff's $200,000, which had been returned from

18 Pelico, and therefore that this amount would be credited toward

19 Plaintiff's contribution under the Contract Agreement. (*Id.* ¶ 72.)

20 Plaintiff then paid Divens the $10,000 balance. (*Id.*)

21      In May 2012, Plaintiff demanded from Divens the return of the

22 $210,000. (*Id.* ¶ 73.)  Divens told Plaintiff that the money was

23 being held in the client trust account of a "major, reputable law

24 firm," but that he could not disclose the identify of the firm.

25 (*Id.*)  Divens told Plaintiff that he was therefore unable to return

26 Plaintiff's money. (*Id.*)  As of November 2012, the SBLC had not

27 been funded and Plaintiff's money had not been returned. (*Id.* ¶

28 75.)

1  **II.  LEGAL STANDARD**

2       **A.   Rule 12(b)(6)**

3       Rule 8 of the Federal Rules of Civil Procedure "requires more

4  than labels and conclusions, and a formulaic recitation of the

5  elements of a cause of action will not do . . .  Factual

6  allegations must be enough to raise a right to relief above the

7  speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

8  555 (2007).  When considering a 12(b)(6) motion to dismiss for

9  failure to state a claim, "all allegations of material fact are

10  accepted as true and should be construed in the light most

11  favorable to the plaintiff."  *Resnick v. Hayes*, 213 F.3d 443, 447

12  (9th Cir. 2000).

13       A court need not accept as true conclusory allegations or

14  allegations stating a legal conclusion.  *In re Stac Elecs. Sec.*

15  *Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996); *Iqbal v. Ashcroft*, 129

16  S.Ct. 1937, 1940-41 (2009) ("mere conclusions[] are not entitled to

17  the assumption of truth.").  A court properly dismisses a complaint

18  on a Rule 12(b)(6) motion based upon the "lack of a cognizable

19  legal theory" or "the absence of sufficient facts alleged under the

20  cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

21  F.2d 696, 699 (9th Cir. 1990).  The plaintiffs must allege

22  "plausible grounds to infer" that their claims rise "above the

23  speculative level." *Twombly*, 127 S. Ct. at 1965.  That is, the

24  plaintiffs' obligation requires more than "labels and conclusions"

25  or a "formulaic recitation of the elements of a cause of action."

26  *Id.* at 1964-65.

27  ///

28  ///

**III. DISCUSSION**

Plaintiff's claims against the Divens Defendants include civil RICO violations pursuant to 18 U.S.C. § 1962(c) and (d), fraud, and breach of contract.

**A.  RICO**

Plaintiff's RICO claim is pled against all Defendants.  The claim therefore includes, but is not limited to, the Divens Defendants, although only those Defendants' motion is presently before the Court.

"The Racketeer Influenced and Corrupt Organizations ("RICO") Act, passed in 1970 as Title IX of the Organized Crime Control Act, provides for both criminal and civil liability." *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007).  To state a claim under § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

Here, Plaintiff alleges that "[a]ll defendants collectively constitute [an] enterprise" engaged in a racketeering scheme. (Federal Claims Case Statement at 17.)  Plaintiff claims that the purpose of the enterprise was to defraud Plaintiff of his funds. Specifically, he claims that all of the defendants engaged in wire fraud, 18 U.S.C. § 1343, and money laundering, 18 U.S.C. § 1956 "by accepting the victim's wire transfers with the intent to defraud the victims out of the money without providing the loan the parties contracted for." (*Id.* at 15.)  Plaintiff also claims that "Defendants attempted to conceal their fraud by shuffling the victims' funds from various bank accounts; for instance, Defendant Briscoe allegedly transferred HydroTherm's funds to an unknown law

6

1  firm and it is believed that Defendants Morelli and Divens each

2  transferred Plaintiff Rubin's funds in a similar fashion." (*Id.* at

3  15-16.)

4       The first flaw in Plaintiff's pleadings is that he fails to

5  allege how all of the various defendants—some of whom only

6  transacted with the dismissed plaintiff Hydro Therm—together

7  constitute a single enterprise. Plaintiff's complaint contains a

8  section titled "General Allegations Regarding the Criminal

9  Enterprise," which is broken down into additional sections,

10 including a "General Overview of the Scheme," "Allegations Related

11 to Hydro," and "Allegations Related to Rubin." The latter section

12 is further divided into two sections: "Allegations Related to the

13 Briscoe/Divens Scheme" and "Allegations Common to the

14 Darkshore/Morelli Scheme." (Compl. ¶¶ 32-85.) All of the

15 transactions alleged in these various schemes are distinct from one

16 another and contain no specific allegations of interrelated

17 conduct. Further, the "General Allegations" section precedes the

18 RICO cause of action, which incorporates by reference the general

19 allegations and adds conclusory allegations that "the Defendants

20 within the enterprise maintained a relationship with each and every

21 other Defendant for the common purpose of carrying out racketeering

22 activity." (*Id.* ¶ 90.)

23      With respect to an association-in-fact enterprise, the type of

24 enterprise Plaintiff alleges here, the Supreme Court has stated:

25   [A]n association-in-fact enterprise must have at least
     three structural features: a purpose, relationships
26   among those associated with the enterprise, and
     longevity sufficient to permit these associates to
27   pursue the enterprise's purpose. As we succinctly put
     it in *Turkette*, an association-in-fact enterprise is 'a

28

7

1     group of persons associated together for a common
  purpose of engaging in a course of conduct.'
2

3   *Boyle v. United States*, 556 U.S. 938, 946 (2009) (quoting *United*

4   *States v. Turkette*, 452 U.S. 576, 583 (1981)).  Although the

5   complaint alleges that all of the defendants had the common

6   purpose of defrauding the plaintiffs, it fails to allege any

7   relationship among the various defendants.  Only two of the

8   eighteen named defendants were allegedly involved in more than one

9   of the three distinct schemes alleged in the Complaint.  Defendant

10  Briscoe was allegedly involved in the BDP/UBS scheme that also

11  allegedly involved the Divens Defendants, and Briscoe was

12  allegedly involved in the Hydro Therm scheme, which is no longer

13  at issue in this case.  Defendant Jamison was allegedly involved

14  in both schemes related to Rubin—the scheme involving the Divens

15  Defendants and a separate scheme that is not at issue in the

16  motion before the Court.  However, Plaintiff alleges no facts to

17  show any relationship between schemes other than that they share a

18  few common participants and the same victim (Plaintiff Rubin).

19  There are no allegations that any of the defendants involved in

20  each of the schemes were even aware of the defendants involved in

21  other schemes.  This is insufficient to support the existence of

22  an associated-in-fact RICO enterprise comprised of all of the

23  named defendants, and for similar reasons, the allegations are

24  insufficient to establish a "pattern" of racketeering activity

25  across all of the defendants.  *See Howard v. Am. Online Inc.*, 208

26  F.3d 741, 749 (9th Cir. 2000) ("[M]erely having the same

27  participants is insufficient to establish relatedness. . . . To

28  hold that Plaintiffs have established relatedness solely because

1   they implicate the same participants makes that requirement

2   virtually meaningless.").

3        Even if the Court were to read the Complaint as alleging

4   multiple separate enterprises—which it need not do, and which both

5   the Complaint and Plaintiff's Federal Claims Case Statement make

6   clear is not Plaintiff's intention—Plaintiff fails to plead the

7   predicate acts engaged in by the Divens Defendants with sufficient

8   particularity to sustain his RICO claim.  The two predicate acts

9   alleged by Plaintiff are wire fraud and money laundering.  Both

10  are predicate acts defined by Section 1961 of RICO.  *See* 18 U.S.C.

11  § 1961(1).

12       Federal Rule of Civil Procedure 9(b) requires that fraud be

13  pled with particularity.  It provides: "In all averments of fraud

14  . . ., the circumstances constituting fraud . . . shall be stated

15  with particularity.  Malice, intent, knowledge, and other

16  condition of mind of a person may be averred generally."  "Rule

17  9(b) 'requires the identification of the circumstances

18  constituting fraud so that the defendant can prepare an adequate

19  answer from the allegations.'" *Odom*, 486 F.3d at 553 (quoting

20  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393,

21  1400 (9th Cir. 1986)). "[T]he pleader must state the time, place,

22  and specific content of the false representations as well as the

23  identities of the parties to the misrepresentation."  *Id.*

24  (internal quotation marks omitted).  In short, the factual

25  circumstances of the fraud itself must be alleged with

26  particularity.  *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541,

27  1547 (9th Cir. 1994).  This heightened pleading requirement

28

1  applies to fraud-based predicate acts in RICO causes of action.

2  *See Odom*, 486 F.3d at 553-54.

3       "[A] wire fraud violation consists of (1) the formation of a

4  scheme or artifice to defraud; (2) use of the United States wires

5  or causing a use of the United States wires in furtherance of the

6  scheme; and (3) specific intent to deceive or defraud."  *Id.* at

7  554.   Although Plaintiff alleges that he wired $200,000 to

8  Divens's escrow account, and although the exhibit attached to the

9  Complaint lists a Bank of America account number for Divens,

10 Plaintiff never specifically alleges when he wired the money, from

11 what institution he wired it, or to which institution it was

12 delivered.  (*See* Compl. ¶ 62 & Ex. C.)   Neither does Plaintiff

13 allege the dates of his conversations with Divens about the money

14 once he discovered it had been released to "an unknown third

15 party."  (*See Id.* ¶¶ 66-70.)   He does not allege when or how he

16 paid Divens the additional $10,000 required by the parties'

17 Contract Agreement.  (*See Id.* ¶ 72.)   As these were conversations

18 in which Plaintiff participated and wire transfers that he

19 initiated, he should be able "to plead the factual circumstances

20 of the alleged fraud with the requisite level of particularity."

21 *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558-59 (9th Cir.

22 2010).

23      With respect to the predicate act of money laundering, 18

24 U.S.C. § 1957 "makes it unlawful to 'knowingly engage[ ] or

25 attempt[ ] to engage in a monetary transaction in criminally

26 derived property of a value greater than $10,000,' if that

27 property 'is derived from specified unlawful activity.'"  *United*

28 *States v. Phillips*, 704 F.3d 754, 763 (9th Cir. 2012).   The Divens

1 Defendants' alleged wire fraud could constitute the "specified

2 unlawful activity" in this case, *see* 18 U.S.C. § 1957(f)(3); 18

3 U.S.C. §§ 1956(c)(7)(A), 1961(1)(B), however, Plaintiff does not

4 even attempt to connect any particular monetary transactions or

5 unlawful activity to the money laundering predicate, nor does he

6 allege whether the Divens Defendants "had the requisite intent to

7 launder funds in furtherance of a RICO scheme." *Desoto v. Condon*,

8 371 Fed. App'x. 822, 824 (9th Cir. 2010).

9     Indeed, Plaintiff's RICO allegations state:

10   Defendants engaged in "racketeering activity" within
     the meaning of 18 U.S.C. § 1961(1) by engaging in the
11   acts set forth above.  The acts set forth above
     constitute a violation of one or more of the following
12   statutes: 18 U.S.C. § 1343 and 18 U.S.C. § 1957.  The
     Conspiring Defendants and the other conspirators each
13   committed and/or aided and abetted the commission of
     two or more of these acts of racketeering activity.

14
(Compl. ¶ 92.)

15
     To the extent that the particular relevant facts are buried

16
in the "General Allegations" section—the only possible "acts set

17
forth above"—which comprises 54 paragraphs over 11 pages, the

18
Court is not required to sift through the allegations to find the

19
facts that relate to each cause of action. *See Izenberg v. ETS*

20
*Services, LLC*, 589 F. Supp. 2d 1193, 1203-04 (C.D. Cal. 2008)

21
("[T]he court need not guess which activities allegedly constitute

22
predicate acts."); *Graf v. Peoples*, 2008 WL 4189657 (C.D. Cal.

23
Sept. 4, 2008) ("Plaintiff's RICO claims incorporate the

24
Complaint's initial lengthy description of many different asserted

25
acts of wrongdoing by various Defendants.  Plaintiff does not

26
expressly identify any RICO predicate acts, but simply

27
incorporates his previous allegations.  Such 'shotgun' pleading is

28

1  insufficient to plead a RICO claim.").

2      The Court previously required that the Plaintiff specify

3  precisely the facts that supported his RICO claim in a Federal

4  Claims Case Statement.  However, Plaintiff's statement does little

5  to clarify the Complaint and fails to expressly answer each of the

6  required categories of information.  The statement repeats almost

7  verbatim different sections of the Complaint, and in certain

8  places, instead of providing the requested information, it refers

9  the Court to a previous section where that information is

10  purportedly, but not always, provided (for example, the dates of

11  the predicate acts requested in Section 5(b)).

12      Because Plaintiff has insufficiently plead a plausible claim

13  for damages under RICO, the Court grants Defendants' motion to

14  dismiss this claim with prejudice.

15      **B.    Remaining State Law Claims**

16      Plaintiff's RICO claim provides the sole basis for federal

17  question jurisdiction.  While federal courts may exercise

18  supplemental jurisdiction over state-law claims "that are so

19  related to claims in the action within [the court's] original

20  jurisdiction that they form part of the same case or controversy

21  under Article III of the United States Constitution," 28 U.S.C. §

22  1367(a), a court may decline to exercise supplemental jurisdiction

23  where it "has dismissed all claims over which it has original

24  jurisdiction," *id*. § 1367(c)(3).  Indeed, unless "considerations

25  of judicial economy, convenience[,] and fairness to litigants"

26  weigh in favor of the exercise of supplemental jurisdiction, "a

27  federal court should hesitate to exercise jurisdiction over state

28  claims."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966);

1  *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)

2  ("[A] federal court should consider and weigh in each case, and at

3  every stage of the litigation, the values of judicial economy,

4  convenience, fairness, and comity.").

5      Accordingly, the court declines to exercise its supplemental

6  jurisdiction here.

7  **IV.   CONCLUSION**

8      Plaintiff has had two opportunities to adequately plead his

9  claims—once in his Complaint, and once in his Federal Claims Case

10 Statement in response to the Court's Order to Show Cause.  In that

11 Order, the Court warned Plaintiff that "[f]ailure to adequately

12 respond to this Order may result in the dismissal with prejudice

13 of all federal claims for relief."  For the foregoing reasons, the

14 Court GRANTS the Divens Defendants' motion to dismiss Plaintiff's

15 RICO claim with prejudice.

16     The Court also GRANTS the Divens Defendants' motion to

17 dismiss Plaintiff's fraud and breach of contract claims as to the

18 Divens Defendants.  The Court recognizes, however, that if true,

19 Plaintiff's allegations are serious, and the Court therefore

20 dismisses Plaintiff's state law claims without prejudice as to his

21 re-filing in state court with appropriate allegations of fraud.[1]

22     Finally, because Plaintiff's RICO claim is pled against all

23 Defendants and Plaintiff has insufficiently alleged an

24 association-in-fact enterprise consisting of all Defendants, the

25 RICO claim is dismissed with prejudice as to all remaining

26 Defendants.  *See Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638

27 _____

28     [1] The Court notes that any relevant statues of limitations are likely subject to equitable tolling.

1  (9th Cir. 1988) ("A trial court may act on its own initiative to

2  note the inadequacy of a complaint and dismiss it for failure to

3  state a claim . . . . The court must give notice of its intention

4  to dismiss and give the plaintiff some opportunity to respond

5  unless the plaintiffs cannot possibly win relief." (internal

6  quotation marks omitted)).  Plaintiff cannot possibly win RICO

7  damages against the remaining Defendants as he has failed to

8  allege the existence of an enterprise.  For the same reasons as

9  with the state law claims against the Divens Defendants, the Court

10  also dismisses the fraud, breach of contract, and negligence

11  claims as to all remaining Defendants, without prejudice as to

12  their re-filing in state court.

13  IT IS SO ORDERED.

14

15

16  Dated: April 18, 2013

17                                        DEAN D. PREGERSON
                                          United States District Judge

18

19

20

21

22

23

24

25

26

27

28

14